This was an action of ejectment brought to recover a tract of land on the south side of Duck River.
The lessor of the plaintiff claimed under a grant from the State of North Carolina, dated the 7th day of April, 1790, calling for five thousand acres, "lying on the south side of Duck River, on both sides of Fountain Creek, adjoining Thomas Gill and Elijah Robertson's two tracts, Nos. 1,043 and 1,045, beginning on Gill's north-east corner, at a red-oak, walnut and poplar; thence north, thirty-five chains and twenty-five links, to a poplar, Robertson's line, of No. 1,043; thence west with said line, forty-six chains, to a red-oak, Robertson's corner; thence north with said survey to William Gilbert's corner, in all two hundred and eighty-five chains and fifty links, to an ash; thence west, one hundred and sixty chains and seventy-five links, to a stake; thence south, one hundred and twenty-two chains, to a stake in said Robertson's line of No. 1,045; thence east with said line, sixteen chains, to a stake, Robertson's corner; thence south with said survey, one hundred and ninety chains and seventy-five links, to an ash; thence east, one hundred and ninety chains and seventy-five links, to the beginning."
The plat and certificate of survey attached to the grant contained the same courses and distances, and the third line calls to run "north with said survey to William Gilbert's corner, and with said Gilbert's survey, in all two hundred and eighty-five chains and fifty links, to an ash." *Page 153 
No marked lines and corners were proved to exist, except where the calls run with other surveys, nor did it' appear that any actual survey was made.
If the plaintiff was bound to stop at William Gilbert's corner it would be far short of the 285 chains and 50 links, and would not produce an interference with the defendants; but, by doing so, the plaintiff would not get his quantity of land, nor would he comply with a great many calls in his grant as it respected the places where he was to adjoin and run with Robertson's claims. By running the full distance of 285 chains and 50 links, without regard to Gilbert's corner, he would comply with every call in the grant.
Gilbert's corner is an ash, hickory, and beech; and the ash is marked as a corner on the south, east, and west sides. Gilbert's corner, at the other extremity of the line, is an ash, hickory, and dogwood.
The defendant produced in evidence a grant of a younger date than that of the plaintiff, covering the land in dispute. He also produced an entry for five thousand acres, upon which the grant issued, calling to lie on the south side of Duck River, on Lytle's Creek, beginning at a tree marked L. D., and running up the creek, so as to include a tree marked A. B. for complement.
Lytle's Creek was proved to have been notorious at the date of the entry, but the existence of the trees was not shown.
Grundy, Whiteside, and Hayes, for the plaintiff. We contend that the plaintiff has a right to run his whole distance called for, without regard to the corner of Gilbert. No rule is more universally settled than that, if there be one incongruous or inconsistent call in an entry or grant it shall be disregarded, or so construed as to give efficacy to the claim, provided, by doing so, consistency is produced in the rest of the calls. The grant calls to run "north to Gilbert's corner, in all 285 chains and 50 links." If the court and jury should be of opinion that we must stop this line at the corner of Gilbert, the consequence will be that scarcely any subsequent call in the grant can be complied *Page 154 
with; whereas, by continuing the course the full distance, consistency will everywhere prevail.
But, abandoning this idea for the present, let us inquire whether the grant is not sufficiently certain, in another point, to authorize the construction for which we contend? It is evident that it was not intended to stop at the corner, or wherefore the expression, "in all 285 chains and 50 links?" This expression is never used, except where it applies to more than one part of a line running the same course. If the object was to terminate the line at the corner of Gilbert, the words would have been, "to Gilbert's corner, 285 chains and 50 links," but when in all is added, it evidently follows that Gilbert's corner is only spoken of as being on the line which is to run that distance, viz. "to Gilbert's corner, and from Gilbert's corner in all 285 chains and 50 links."
Should there be, however, any difficulty upon this part of the subject, we have no hesitation in believing that we have a right to resort to the plat and certificate of survey to ascertain what land was intended to be granted. It does not follow that in all cases the words of the grant are to be pursued; because, if it can be shown, even by parol evidence, where the survey was made, that will control the grant. The land really surveyed is that to which the claimant is entitled, and, therefore, if the person claiming can show where the survey was made by proving the lines and corners of the survey, although the grant may not correspond with them, yet the calls in the grant shall yield. The reason for this is obvious, and will even apply to cases where the certificate of survey corresponds with the grant. No man shall be injured by the act of officers over whom he has no control. If, then, a survey is made for a certain piece of land, but the surveyor, in making out his certificate, is guilty of a mistake as to either course, distance, or object, which mistake is still continued in the grant, yet the party prejudiced will not be injured by such an error, and he will have a right to claim and hold his land as really surveyed. Tay. Rep. 116; 1 Johns. Rep. 495; 2 Hay. Rep. 347; 1 Hay. Rep. 378; Hardin's Rep. 369. *Page 155 
It follows, therefore, that these mistakes of the surveyor or secretary will not prejudice the claimant, and that they may be rectified upon a trial in Ejectment by parol proof. We would then ask whether the case now under consideration is not infinitely stronger than any of those produced? Here we do not rely upon parol proof, but we exhibit record evidence of the particular place where this land was surveyed and where it was intended to lie. If the calls in a grant include by course, distance, or object, more land than was really surveyed, if the error can be shown either by proof of the existence of marked lines and corners or by the production of the plat and certificate upon which the grant emanated, the person claiming title under a grant thus circumstanced can only hold in conformity with the survey. No person denies but that where marked lines and corners can be shown they will conclusively designate the land appropriated; and upon what principle is this idea bottomed? It is upon the principle that the survey being that act which alone can authorize the emanation of the grant, shall be the criterion by which to ascertain the land really intended to be conveyed by the State. The superstructure can not stand upon a broader or other ground than its foundation. If, then, to ascertain this point parol proof has and can be admitted, it would seem to follow that a kind of testimony much less exceptional can not be rejected. The parol proof is to show where the lines and corners are and surely the certificate of the surveyor acting in an official capacity, and which is also matter of record upon its being returned to the office of the Secretary of State, is much higher and better evidence.
Dickinson and Haywood, for the defendants. Before we enter into an examination of the cases produced by the counsel for the lessor of the plaintiff, it will be necessary to consider a preliminary question. The decisions relied on were not made in this State, nor in any State where similar laws exist upon this subject. They recognize the principle that a claimant to land, if a mistake exists in the *Page 156 
grant, may resort to parol proof for the purpose of showing the land really surveyed. The reason why courts have proceeded in this way may be as is contended on the part of the plaintiff. Perhaps cases may occur where justice can not be done unless some such mode of redress is attainable. In this State the Legislature have pointed out the mode of redress which can be sought by the party injured. There exists an express statutory provision declaring that where there shall be a mistake committed either by the surveyor or the Secretary of State, the person injured by such error may upon application to the Circuit Court by way of petition have the error corrected, and his grant so amended as to be as it would have been if no mistake or error had happened. If the Legislature conceived that these matters could be corrected by the respective judicial tribunals in the country upon the trial of the cause in which the mistake occurred, it was surely useless to pass this statute. It would seem that the Legislature intended to remedy an evil not otherwise remediable. The right which courts of justice have to interfere in such eases where no statute has passed on the subject, is, to say the best of it, rather an assumption of power intended to be exercised for good purposes. So soon therefore as the Legislature prescribe a complete and ample mode of redress, that mode alone should be pursued.
The case now under consideration comes within the act of Assembly. The plaintiffs allege that the secretary in making out the grant deviated from the plat and certificate of survey by omitting in the third line the words, "and along with his survey." If the fact be so it was an easy matter to remedy the omission by adopting the course which the Legislature have prescribed. This is neither the place nor the occasion to ask redress.
But if we are mistaken in this point, still we are safe upon another. The only cases where the party has been admitted to exhibit testimony for the purpose of varying the calls in the grant were where a marked line could be shown evidencing thereby *Page 157 
conclusively where the survey was in fact made. The gentlemen have not nor can not produce a solitary decision where such a course has been pursued except in the case of an actual survey. 1 Hay. Rep. 22, 378. In the present instance no actual survey ever was made; and it can not be that the calls in a grant can be corrected by showing a survey in idea. The plat and certificate of survey ought not therefore to be received as evidence to vary the calls in the plaintiff's grant.
Viewing the subject in this light, and believing, as we do, that the plaintiff must resort alone to his grant to ascertain the land to which he has a legal title, no great difficulty exists. It is a well settled rule, that where a marked line, or corner, or tree, or natural boundary is called for, the line must run to such object without regard to either course of distance. 2 Hay. Rep. 3, 75, 139, 160, 183, 353. The call therefore, in the plaintiff's grant, to run "with Robertson's line, to the corner of William Gilbert," must terminate at the corner of Gilbert, although the distance mentioned is not completed. By running in this way, no interference will be occasioned with the defendants.
I feel no sort of difficulty upon the questions arising out of the evidence in this cause. The defendant's entry can be of no avail; not only because it wants notoriety, but because the objects called for want identity. To make an entry good, both these things must concur and exist. In general, a call for a tree is not good; and indeed it never can be a good call, unless there is something else in the entry leading the subsequent locator so near to the place where the tree is, that it will not be imposing an unreasonable degree of trouble on him to make search for it. Every valid entry must contain such a degree of notoriety as to the objects called for, or such a description in relation to a notorious object, as will lead a subsequent inquirer, who uses reasonable diligence and industry, to the place *Page 158 
located. The first call in this entry is, that the land shall lie on the south side of Duck River. This is a good call to show the part of the country where the land lies. The next call, to wit, on Lytle's Creek, is still bringing you nearer to the place. The entry then calls to "begin at a tree marked D L." This tree is not shown, nor is it established where the tree stood, if it ever existed. In this point of view, the entry is void, for want of identity. If the tree could be shown, perhaps, as the Creek is only six miles long, it would not be unreasonable to require a subsequent locator to search for it. But upon this point, no opinion is given; it is not necessary that one should be given.
It seems to me that the grant of the plaintiff is sufficiently intelligible upon the face of it, without resorting to the plat and certificate of survey. It is undoubtedly true, as has been argued by the counsel for the defendant, that in general, when an object is called for in a grant, the line must terminate at that object, whether it be a tree, marked line, or natural boundary, unless there be something else in the grant, evidencing that the object is not called for as a termination of the line. In this case, the use of the expression in all, shows that the grantee did not intend to stop at the corner of Gilbert. Where then must he stop? Surely at the end of the distance. But if this should be doubtful, the question is disrobed of all its difficulty by resorting to the plat and certificate of survey, which I have no hesitation in saying may be done. It is admitted, and very properly admitted, that if a mistake is alleged to exist in the calls of the grant, parol proof may be introduced to show where the lines were actually run; and the reason is much stronger in favor of the admission of the plat and certificate of survey.
Verdict for the plaintiff.